## FOWLER and wife *vs.* COLT and others.

1. A statement made by a testator, estimating the amount of his estate
with reference to his will and the disposition of it therein made, is inad-
missible to show at what rate interest should be charged against the estate
upon a legacy given by the will.

2. Where it is the duty of executors to separate a legacy from the estate
within a reasonable time, and to invest it with a view to accumulation and
the necessities of the support and education of the legatee, their neglect of
such duty makes them chargeable with interest at the legal rate, for the
time being.

3. Where testator's whole estate was vested at his death in a certain
stock, of which he held the whole, in ascertaining the interest due upon a
pecuniary legacy given by the will, the amount of which legacy has not
been separated, as it should have been, from the estate, the dividends which
have been, during all the time for which interest is to be ascertained, irreg-
ular and desultory, not based on the earnings of the company, and are no evi-
dence of the income from the shares, are no guide as to the rate of interest
to be charged, but interest should, in such case, be calculated at the legal
rate from time to time, during the period required.

4. The omission of executors to invest a legacy as intended by the tes-
tator, will not be excused by the fact that it was for the interest of the
residuary legatees, that the legacy should not be separated from the estate
so long as it could be avoided.

On exceptions to master's report, made on petition of Edward Salisbury and Maria Theresa, his wife.

*Mr. William Pennington, Mr. Ashbel Green,* and *Mr. Williamson,* for exceptant.

*Mr. R. Wayne Parker* and *Mr. Cortlandt Parker,* contra.

THE CHANCELLOR.

On the 15th of September, 1868, an interlocutory decree was made in this cause, whereby, among other things, it was ordered and decreed, that the surviving executor of the last will and testament of Roswell L. Colt, deceased, should take assignments of certain bonds and mortgages, in the decree mentioned and set forth, guaranteed by the Society for Establishing Useful Manufactures, to them as trustees for Roswell L. Colt, junior, and his sister, Maria Theresa, and that the executor should hold the bonds, as trustee, for the benefit of Roswell L. Colt, junior, and his sister, Maria Theresa, subject to the trusts created for them by the will of Roswell L. Colt and the codicil thereto, and that the surviving executor should be discharged, as such executor, from all claim or liability on account of the same. When this decree was made, Maria Theresa, who had then intermarried with Edward Salisbury, resided out of the United States. It was based on a report, made by a master on the hearing, before whom Mrs. Salisbury, who was then a minor, was represented by the solicitor of her guardian *ad litem.*

On the 4th of December, 1872, Mr. Salisbury and his wife, filed their petition in this suit, setting forth these circumstances, and insisting that the report and decree were founded on mistake as to Mrs. Salisbury's rights, and praying that the decree might be reviewed and set aside, and that it might be referred to a master of this court to take and state an account of the principal and interest due her upon her legacy, charging her with payments theretofore made, but crediting her with all commissions with which she had been charged in

the account by the executors. The legacy referred to in the petition, is one of $20,000, given to Mrs. Salisbury in the codicil above mentioned. The surviving executor answered the petition, admitting the truth of its statements, and joining in the prayer for an account of Mrs. Salisbury's legacy and the accumulations thereon, but insisting on the *bona fides* and fairness of the decree and of the account on which it was based, and that his accounts, as executor, had been fairly made and were conclusive and binding on the petitioners, unless impeached; but submitting it to this court to determine whether those accounts should be re-stated, and expressing willingness to acquiesce in the decision. On this petition and answer, an order was made on the 18th of March, 1872, vacating and setting aside the decree of September 15th, 1868, and referring it to one of the special masters of this court to take and state an account of the amount due to Mrs. Salisbury for principal and interest on her legacy; and directing him to allow her interest, after the rate of seven per centum per annum, for all the time during which the executors of Roswell L. Colt, deceased, received interest at that rate, upon the money in their hands belonging to her, and for all other time after the rate allowed by law, at that time. He was further directed to credit the executors in the account, with all moneys paid by them for or to her, but not with any commissions, although theretofore charged by them. The special master reported, that as the estate of the testator was invested by him in the capital stock of the above mentioned society, and so continued to the date of his death; and as the legacy bequeathed to Mrs. Salisbury must be paid out of the proceeds of that stock belonging to the estate; and as the executors had received from the society dividends of which he states an account on the par value of their stock; they should be charged with interest on the legacy at six per cent. per annum for every year during which they received dividends on the stock at the rate of six per cent. or less, which were the years 1856, 1857, 1858, 1859, 1861 and 1862, and for all other years to the 15th day of March, 1866, and from

thence to the date of this report (April 22d, 1873,) at the rate of seven per cent. per annum. The master disallowed certain payments, for which the executor claimed credit as having been made for the internal revenue tax assessed upon the legacy. To the report, the surviving executor excepted as follows : *First.* To the allowance of interest on the legacy and its accumulations at the rate of seven per cent. per annum, from November 22d, 1859, to November 22d, 1861, and from November 22d, 1862, to November 22d, 1866, the exceptant insisting that the master should only have allowed six per cent. during those periods. *Second.* To the charge of interest during those periods, at seven per cent., on the ground that the executors received, on their shares of the stock during those periods, dividends at the rate of $7 per share, whereas it ought to have been only six per cent., because the executor of the testator received less than seven per cent. during those periods, on the value of the stock. *Third.* To the statement of the account with annual rests. *Fourth.* To the refusal to allow the payments made for internal revenue tax ; and, *Fifth.* To the refusal to allow to the executor, commissions on the principal of the legacy.

This court, in *Fowler* v. *Colt*, 7 *C. E. Green* 44, 47, 49, upon exception to a master's report, made on petition of Roswell L. Colt, junior, in respect to his legacy under the codicil above mentioned, passed upon the very questions raised by the third and fifth exceptions, as to the propriety of stating the account with annual rests, and the right to commissions as against the legatee. The disposition there made of these questions is entirely satisfactory to me. Besides it may be remarked, that the order of reference in this case, expressly forbids the master to allow commissions. These two exceptions will be overruled.

The question raised by the second exception was also considered and decided in Fowler *v.* Colt, but not under such circumstances as to make that decision authoritative in this case. That question is whether, seeing that the stock is valued at $300 per share, its par value being $100, a dividend of the

par value ought not to be regarded as a dividend on the stock at its true value, and therefore, in reality, only a dividend of one-third of its nominal amount; so that a dividend of six per cent. on the par value would really be one of only two per cent. on the true or market value. This distinction is urged because of the fact that the whole, or nearly all of the testator's estate was, at the time of his death, invested in the stock mentioned in the master's report, and it is deemed unjust to hold his estate to the payment of interest on the basis of the dividends received on the par value of the stock. A statement made by the testator, in which the amount of his estate is estimated with reference to his will and the disposition therein made, was introduced by the executor. In that estimate the stock is put down at $300 per share, and appears to have constituted all of his large estate of over $700,000, except real estate of the value of $5000. This paper is inadmissible as evidence in this cause, on plain principles. *Leigh* v. *Savidge*, 1 *McCart.* 124. But if it were admitted, it would not affect the question now before me. The codicil directs that the executors and the survivors and survivor of them, and his executor or administrator, shall hold in trust, for the benefit of the testator's granddaughter, Maria Theresa Colt, the sum of $20,000, to be paid to her when she shall arrive at the age of twenty-five years, with the increase thereon from accumulation. It further directs, that if she shall die before she arrives at that age, leaving lawful issue, the legacy, with the accumulation thereon, be paid to the legal guardians of such issue, for the use of such issue, to be divided among them according to the laws of New Jersey for the distribution of the estates of those dying intestate. But if she shall die before attaining to that age, without issue, the testator directs that the said sum of $20,000, with the accumulation thereon, be added to his general estate, and be considered part and parcel thereof, and be divided into three shares, to go to his two sons and his daughter, or to their issue. He further ordered and directed, that after Maria Theresa should arrive at the age of eighteen years, or should marry, the whole

yearly income of the $20,000 be paid to her for her separate use and control, married or unmarried, until she should arrive at the age of twenty-five years, if she should live so long, and that in the meantime, she be well educated and supported out of the income she should derive from her father's estate, and from such part of the income from that "conditional" bequest as might be necessary. It will be seen that the testator's intention was that his executors should set apart for Maria Theresa, the sum of $20,000 to be accumulated. He provided for supplementing her income from her father's estate, with so much of the income of the $20,000 as might be necessary for her proper support up to the age of eighteen years, after which time, until she should attain to the age of twenty-five years, she was to have the whole income of the $20,000.

Under the direction and provisions above stated, it was the duty of the executors to separate, within a reasonable time, the $20,000 from the estate and put it at interest, with a view to accumulation, and the necessities of the support and education of the legatee. For aught that appears, they might have done this immediately after the death of the testator. The master seems to have considered that no investment was necessary, in view of the fact that the testator's whole estate was invested, at his death, in the stock, and he therefore, to a certain extent, treated the matter as if the investment had been directed by the will to be continued in that stock. It was argued by the counsel of the exceptant, that the executors were not required to withdraw the money from this investment, in which the testator himself had placed it. If this were conceded, it would not affect the conclusion at which I have arrived ; for, it is impossible, from the case as it stands before me, to determine what the income of the stock was during the period covered by the report. The dividends made cannot be regarded as evidence of the income. The exceptant testified before the master that the executors controlled the society practically, and drew from that body dividends as they needed them. In 1868, he says, they had to pay a large amount of legacies, somewhere about

$64,000, and they obtained the money by a dividend from the society. It is evident that the dividends are no guide to the earnings or profits. They cannot fairly be regarded as evidence of the income from the shares. As was said in Fowler v. Colt, they were irregular and desultory, not according to, or based on, the earnings of the society, but upon the necessities of the executors, and the testator's children. But, if the dividends be taken as evidence of the full net earnings or profits of the society, the master has strictly complied with the directions of the order of reference, as to all of the periods of time (from November 22d, 1859, to November 22d, 1861, and from November 22d, 1862, to November 22d, 1866,) mentioned in the first exception, with the exception of that in which the year 1862 is embraced ; for, for the year 1860, the society paid a dividend of $8 per share; for 1861, $7 ; for 1863, $7 ; for 1864, $8 ; for 1865, $10 ; and for 1866, $17. In 1862, a dividend of less than seven per cent. was paid on the par value of the stock. The dividends amounted, in the aggregate, from 1857 to 1867, both inclusive, to $86 per share, an average of about $8 per share at the par value. In 1868, as has been stated, a dividend of over $30 per share was paid, in order to pay legacies. It is obvious, then, that these dividends cannot be regarded as the interest received by the executors on the legacy of Mrs. Salisbury, within the meaning of the order of reference. Under the circumstances, the liability of the exceptant to the payment of interest, must be fixed without reference to the dividends.

The codicil directs that the executors and the survivors and survivor of them, and the executors and administrators of the survivor, hold certain sums of money in trust for Roswell L. Colt, Maria Theresa Colt, and Margaret O. Colt, the children of the testator's deceased son Roswell, viz., for Roswell L. Colt, $40,000 ; for Mrs. Salisbury, $20,000 ; and for Margaret O. Colt, $20,000, on the trusts declared in the codicil, in respect to those moneys, and then directs that the residue of the estate be equally divided between the testator's three children, declaring it to be his intention to leave the

residue of his estate to and among his said three children and their heirs, exclusive of the children of his deceased son Roswell. Roswell L. Colt, Mrs. Salisbury, and Margaret O. Colt, therefore, have no interest in the estate of the testator, beyond the legacies given to them. These legacies are pecuniary legacies; they are not payable in stock. No direction is given as to the postponement of payment of them in the interest of the estate at large, nor is any such intention indicated by the will or codicil. The testator did not direct the executors to continue the investment he had made of this money. They were bound to separate these amounts from the estate and securely invest them within a reasonable time. They did not do so. As before remarked, it does not appear that it was not practicable for them to do it very soon after the death of the testator. It may have been, and probably was, for the interest of the residuary legatees, that this money should not be taken out of the estate until a late day, and it was probably for this reason that the separation and investment were not made. That, however, is no excuse for the neglect or omission of the executors in the premises. Their liability is fixed by the established principles governing such cases. Their unexcused failure to make such separation and investment, is a breach of their trust, for which they are chargeable with interest. *Perry on Trusts,* §§ 449, 453, 462, 465. They are, however, chargeable with interest only at the legal rate, for the time being, in the absence of special agreements. *Perry on Trusts,* § 468; *Gravers' Appeal,* 50 *Penn. St.* 189. They are, therefore, chargeable with interest, at the rate of six per centum per annum, up to the year 1866, in which, by statute of March 15th, interest at the rate of seven per cent. per annum was legalized as a common rate. The master erred in charging the executor with interest at seven per cent. during the periods mentioned in the first exception. The legal rate of interest, in the absence of special contract, then, was six per cent.; and the executor should have been charged at that rate. The first exception must be sustained. The second exception will be overruled.

It remains to consider the fourth exception, which is founded on the refusal of the master to allow the executor certain disbursements which he alleges he made on account of Mrs. Salisbury, for internal revenue taxes, from 1862 to 1869, both inclusive. There is no evidence before me as to these disbursements, except the receipts of the collector of internal revenue. None of them, except those for 1868 and 1869, appear to be for assessments in respect of Mrs. Salisbury's income from her legacy. The first of those is on an income of $200, and the tax paid was $10. The other was upon an income of $190, and the tax paid, $9. The others are for assessments against the executors or executor, and are for different amounts of tax, the amounts of income on which they were paid, varying from $445 to $32,678. I am unable to determine whether any part of the payments made by the executors for internal revenue tax, except as above stated, in the years 1868 and 1869, was made on account of Mrs. Salisbury's income. The fourth exception will be allowed, so far as the tax paid for 1868 and 1869 is concerned. The result is, the first and fourth exceptions are allowed. The rest are overruled.